Mark P. DePASQUALE

v.

Thomas M. HARRINGTON, Deputy Director, Division of Motor Vehicles, Department of Transportation, State of Rhode Island.

No. 90–119–M.P.

Supreme Court of Rhode Island.

Nov. 14, 1991.

John L. Quigley, Jr., Domenic Tudino, Providence, for plaintiff.

F. Thomas O'Halloran, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes to us on a petition for certiorari to review a judgment of the District Court affirming a decision of the Rhode Island Department of Transportation, Division of Motor Vehicles (Registry), suspending the petitioner's driver's license. We affirm the judgment of the District Court. The facts insofar as relevant to this petition are as follows.

On March 15, 1988, the State of New Hampshire ordered the suspension of petitioner's driving privileges as a result of his conviction for driving while intoxicated in New Hampshire. Thereafter, on August 10, 1988, petitioner was notified by the Registry that his Rhode Island driver's license and registrations would be suspended, effective August 12, 1988, pursuant to G.L.1956 (1982 Reenactment) § 31–11–3 because of his out-of-state conviction.

On August 17, 1988, the Registry held a hearing at petitioner's request under § 31–

11–7(b), as amended by P.L.1986, ch. 494, § 3, to review the order of suspension. At this hearing the Registry offered a photostatic copy of the New Hampshire Notice of Action that had been sent to the Registry by the New Hampshire authorities. This document was written on official stationery and signed by the director of the New Hampshire Division of Motor Vehicles. The document indicated that petitioner had been convicted of driving while intoxicated. The Registry presented no other evidence of petitioner's conviction. The petitioner did not challenge the accuracy of the information contained in the document at the hearing. At the conclusion of the hearing the suspension of petitioner's license was upheld. The petitioner then filed an *ex parte* motion for a temporary restraining order in the District Court, seeking to prevent the suspension from taking effect. This motion was granted. However, after a subsequent hearing the District Court ordered that the ruling of the Registry be affirmed and that the temporary restraining order be vacated. The petitioner then sought review in this court by petition for certiorari.

The petitioner challenges the Registry's action on the grounds that the photostatic copy of the New Hampshire Notice of Action constituted incompetent hearsay evidence and additionally had not been properly authenticated. We conclude that petitioner's arguments are not persuasive.

Section 31–11–3, which grants the Registry the authority to suspend the driver's license of a Rhode Island citizen on the basis of an out-of-state conviction, provides:

> "The registry is authorized to suspend or revoke the license of any resident of this state or the privilege of a nonresident to drive a motor vehicle in this state *upon receiving notice of the conviction* of such person in another state of an offense therein which, if committed in this state, would be grounds for the suspension or revocation of the license of an operator or chauffeur." (Emphasis added.)

The requirements of § 31–11–3 speak in terms of "notice," without defining the type of notice adequate for the Registry to suspend or revoke a driver's license. Accordingly we must consider what constitutes reliable notice sufficient to uphold a license suspension and whether that standard of competency has been met in this case.[1]

■ A license-suspension proceeding is an administrative hearing, not a criminal trial. *Considine v. Rhode Island Department of Transportation,* 564 A.2d 1343, 1344 (R.I.1989); *Beaudoin v. Petit,* 122 R.I. 469, 472, 409 A.2d 536, 538 (1979). Hence we look to the procedures set out in the General Laws for conducting administrative proceedings to determine the rule of competency applicable here.

General Laws 1956 (1988 Reenactment) § 42–35–10(a) ("Rules of Evidence—Official Notice") reads in part:

> "Irrelevant, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied in civil cases

---

**1.** The petitioner's license was suspended pursuant to G.L.1956 (1982 Reenactment) § 31–11–3. Although § 31–11–3 does not afford an opportunity for a review hearing, we have held that § 31–11–7 must be read in *pari materia* with § 31–11–3. *Taft v. Pare,* 536 A.2d 888, 890–91 (R.I.1988). *See also Beaudoin v. Petit,* 122 R.I. 469, 409 A.2d 536 (1979). Section 31–11–7(b), as amended by P.L.1986, ch. 494, § 3 provides:

> "Upon suspending the license of any person as hereinbefore in this section authorized, the registry shall immediately notify the licensee in writing, and upon his request shall afford him an opportunity for a hearing as early as practical within not to exceed twenty (20) days after receipt of such request. Upon such hearing the registrar or his duly authorized agent may administer oaths and may issue subpoenas for the attendance of witnesses and the production of relevant books and papers and may require a reexamination of the licensee. Upon such hearing the registry shall either rescind its order of suspension or, good cause appearing therefor, may continue, modify or extend the suspension of such license or revoke such license."

The petitioner was given such a hearing in accordance with the requirements of § 31–11–7(b). The purpose of such hearing is not to revisit the subject of the licensee's guilt as that question was finally resolved by another tribunal. *Taft,* 536 A.2d at 891. However, the licensee obviously may dispute the fact of his conviction if the Registry's information is incorrect.

in the superior courts in this state shall be followed; but, when necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible under those rules may be submitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs * * *."

It is significant that § 42–35–10(a) does not proscribe the reception of incompetent evidence along with "[i]rrelevant, immaterial, or unduly repetitious evidence." The omission is a deliberate one. The language of § 42–35–10(a), based on § 10(1) of the Revised Model State Administrative Procedure Act of 1961, follows the provisions of § 556(d) of the federal Administrative Procedure Act, which allows federal administrative agencies to consider hearsay evidence when making a determination.[2] 5 U.S.C.A. § 556(d) (West 1977). *See Veg–Mix, Inc. v. United States Department of Agriculture*, 832 F.2d 601, 606 (D.C.Cir. 1987) ("if hearsay evidence meets the standards of the Administrative Procedure Act by being relevant, material, and unrepetitious * * * agencies are entitled to weigh it according it its 'truthfulness, reasonableness, and credibility' "). Cooper, *State Administrative Law* at 384 (1965); 3 Davis, *Administrative Law Treatise* § 16.2 at 222–24, § 16.5 at 235 (2d ed. 1980); *see also McCormick on Evidence*, §§ 351–352 at 1006–12 (3d ed. Cleary 1984). Both the United States Supreme Court and this court have stated directly that hearsay evidence is admissible in administrative proceedings. *Richardson v. Perales*, 402 U.S. 389, 409–410, 91 S.Ct. 1420, 1431, 28 L.Ed.2d 842, 857 (1971); *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 705–06, 68 S.Ct. 793, 805–06, 92 L.Ed.

1010, 1037 (1948); *Craig v. Pare*, 497 A.2d 316, 320 (R.I.1985).

The admission of hearsay evidence in an administrative forum is reflective of the traditional division of function between judge and jury. Many of the rules surrounding the exclusion of hearsay in jury trials are meant to prevent juries, uninitiated in the evaluation of evidence, from hearing unreliable or confusing testimony and rendering a verdict based on such evidence. *See McCormick on Evidence*, §§ 351–352 at 1006–12. Such protection is far less necessary when evidence is presented to a judge sitting without a jury or, as in this case, a hearing officer with substantial expertise in the matters falling within his or her agency's jurisdiction.

There is surely some tension between the ability of an expert administrative agency to consider hearsay evidence, as allowed by § 42–35–10(a), and the need to ensure that such a body act upon reliable evidence. Hearsay evidence may vary significantly in its credibility and probative value, depending on its source and its similarity to evidence that is intrinsically trustworthy. *See United States v. United Shoe Machinery Corp.*, 89 F.Supp. 349, 355–56 (D.Mass. 1950). The reliability of hearsay evidence in a particular instance is also linked to the purpose for which it is offered and the policies underlying the statute being enforced. *See McCormick on Evidence*, § 353 at 1015. In this vein the provisions of § 42–35–10(a) limit the sort of hearsay evidence admissible in administrative proceedings to that "necessary to ascertain facts not reasonably susceptible of proof under [the rules of evidence as applied in civil cases in the Superior Courts of Rhode Island] *if it is a type commonly relied upon by reasonably prudent men in the*

---

**2.** 5 U.S.C.A § 556(d) (West 1977) provides in part: "Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence * * *." The United States Supreme Court and the lower federal courts have consistently held that this provision for exclusion is not to be read to bar hearsay evidence from administrative proceedings. *Richardson v. Perales,* 402

U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Klinestiver v. Drug Enforcement Admin.,* 606 F.2d 1128 (D.C.Cir.1979); *United States ex rel. Ott v. Shaughnessy,* 116 F.Supp. 745 (S.D.N.Y.1953), *aff'd on other grounds,* 220 F.2d 537 (2d Cir.), *cert. denied,* 350 U.S. 847, 76 S.Ct. 60, 100 L.Ed. 754 (1955). *See* 3 Davis, *Administrative Law Treatise,* § 16.4 (2d ed. 1980); *McCormick on Evidence* § 352 at 1010 n. 2 (3d ed. Cleary 1984).

*conduct of their affairs."* (Emphasis added.) [3]

This is a somewhat imprecise standard of competency, but it is a realistic one. An expert administrative tribunal concerned with advancing the public welfare should not be rigidly governed by rules of evidence designed for juries. The Rhode Island Rules of Evidence are to provide the usual and most helpful standard for a hearing officer in adjudging the competency of evidence. However, a hearing officer may take into account evidence that would be excluded from a trial by jury if it would be prudent to do so, given the requirements of the statute being enforced. Such a balancing between inherent reliability and requisite efficiency, as embodied in § 42–35–10(a), is sensible in light of everyday experience. Prudent persons regularly· rely upon hearsay information in determining matters of their most important private concerns. The provisions of § 42–35–10(a) entrust the hearing officer with both the ability to exercise prudence in considering evidence and the reliability that must condition its admissibility.

◼ We conclude here that the photostatic copy provided notice of a conviction sufficient to suspend petitioner's license under § 31–11–3. The document had every appearance of being genuine. It was written on official stationery and contained the signature of the director of the New Hampshire Division of Motor Vehicles. It had been transmitted to the Rhode Island Division of Motor Vehicles by the State of New Hampshire in accordance with the Interstate Driver License Compact, which Rhode Island signed in 1987.[4] The Notice of Action indicated that petitioner had been convicted of driving while intoxicated, an offense that would be grounds for a suspension under § 31–11–3. At the hearing, petitioner did not challenge the accuracy of the information contained in the document. Section 31–11–3 requires a low threshold of evidence—"notice"—for the Registry of Motor Vehicles to suspend a petitioner's license without a preliminary hearing. This relaxed standard of proof reflects the state's considerable concern with the threat to public safety presented by a driver who has already been convicted in another jurisdiction of a serious highway offense. *See Taft v. Pare*, 536 A.2d 888, 891 (R.I.1988). In light of the nature and source of the hearsay in this case, the lack of a serious challenge to its accuracy, and the standard of proof set out in § 31–11–3, we conclude that the photostatic copy is the sort of hearsay "commonly relied upon by reasonably prudent [persons] in the conduct of their affairs."[5] As such, it provided adequate notice of a foreign conviction under the terms of § 31–11–3.

The petitioner further contends that the photostatic copy had not been properly authenticated and so coùld not constitute reliable notice of an out-of-state conviction required by § 31–11–3. In advancing this argument, petitioner relies primarily on our decision in *Frazier v. Petit*, 509 A.2d 998

---

**3.** Consistent with the admonition in G.L.1956 (1988 Reenactment) § 42–35–10(a) that "[t]he rules of evidence as applied in civil cases in the superior courts of this state shall be followed * * *," the administrative tribunal may also naturally consider evidence admissible under the hearsay exceptions set out in the Rhode Island Rules of Evidence and case law interpreting those rules.

**4.** The compact was authorized by Congress; however, this compact does not supersede state law in respect to the establishment of conditions precedent to the suspension of a license. Pub.L. No. 85–684 U.S. Statutes at Large Vol. 72. The Governor was authorized to sign the compact by G.L.1956 (1982 Reenactment) § 31–29–6, as amended by P.L.1986, ch. 284, § 1.

**5.** We contrast our holding in this case with the circumstances in *Wood v. Ford*, 525 A.2d 901 (R.I.1987). The hearsay at issue in *Wood* involved statements of counsel in the course of argument that do not constitute evidence regardless of the form in which they are presented. Additionally the petitioner in *Wood* offered a signed statement concerning an issue that· could have readily and conveniently been the subject of live testimony subject to cross-examination. In such a situation any possible benefits derived from admitting such a statement were outweighed by the ease of obtaining evidence that would be substantially more reliable. Accordingly, this court concluded that such hearsay was not the type of evidence " 'commonly relied upon by reasonably prudent [persons] in the conduct of their affairs.' " *Wood*, 525 A.2d at 903.

(R.I.1986). We believe that the holding in *Frazier*, in light of the different circumstances present in that case, does not support petitioner's contention.

In *Frazier* the plaintiff was stopped by a South Carolina Highway Patrol officer and was issued a traffic summons for driving under the influence of intoxicating liquor under South Carolina law. The plaintiff was subsequently arrested and spent the night in jail. The following morning he posted bond and was given a date to appear in the local traffic court. The plaintiff chose to forfeit the bond in lieu of returning to court to answer the charge against him. Two months later the State of South Carolina provided the Rhode Island Department of Transportation with a photostatic copy of the summons issued pursuant to the arrest. Thereafter, the Registry suspended the plaintiff's driver's license purportedly in accordance with § 31–11–3 and § 31–11–7. *Frazier*, 509 A.2d at 999–1001. Upon review pursuant to a petition for certiorari this court vacated the license suspension, concluding that the copy of the summons did not constitute the "necessary quantum of evidence" to provide the Registry of Motor Vehicles with notice of an out-of-state conviction. *Frazier*, 509 A.2d at 1001.

The petitioner calls our attention to dictum in *Frazier* to the effect that a copy of a judgment is only admissible as authentic in an administrative proceeding if it is accompanied by a certification or official seal of the court. *Id.* In so relying on *Frazier*,

petitioner misconceives our purpose in that case. The court in *Frazier* focused on the lack of persuasive and reliable evidence before the hearing officer to indicate that a conviction had been entered. Such a conclusion could not be adequately supported by a mere traffic ticket. There was also genuine confusion about the legal implications of the plaintiff's forfeiture of bond.[6] The only evidence presented in the hearing failed on its face to inform the hearing officer of the disposition of the plaintiff's case under South Carolina law. In light of these uncertainties we held that "a copy of a traffic summons, *standing alone*, is clearly insufficient evidence of a conviction." (Emphasis added.) *Id.* The court did not, however, mandate that a reliable notice of conviction be accompanied by a certified or exemplified copy in order to prove its authenticity. Such a requirement would have rendered nugatory the various methods of demonstrating authenticity provided by the Rhode Island Rules of Evidence.[7]

■ Under Rule 901(a) of the Rhode Island Rules of Evidence ("Requirement of Authentication or Identification–(a) *General Provision*"), a document may be authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims." We conclude that the circumstances of the case at bar fall within the scope of illustration (7) of Rule 901(b).[8] The Registry is the state agency primarily responsible for compiling records related to the licensure of motor

---

6. In *Frazier v. Petit*, 509 A.2d 998 (R.I.1986) the implications of the plaintiff's conduct were different when viewed under South Carolina law and Rhode Island law. The South Carolina Code of Laws defined "conviction" as follows: "(11) '*Conviction:*' Shall include the entry of any plea of guilty, the entry of any plea of nolo contendre and the forfeiture of any bail or collateral deposited to secure a defendant's appearance in court." S.C.Code Ann. § 56–1–10, (Law. Co-op.1977). Under South Carolina law, therefore, the plaintiff's forfeiture of bond was tantamount to a conviction for the traffic offense with which he had been charged. In Rhode Island, however, there is no statutory or case law equating a forfeiture with a conviction. The traffic summons at issue did not provide on its face a clear statement of the resolution of the plaintiff's case. Hence, the hearing officer

could not determine from the evidence before him whether the plaintiff committed "an offense therein which, if committed in this state, would be grounds for suspension * * *." G.L.1956 (1982 Reenactment) § 31–11–3.

7. Rules 901–903 of the Rhode Island Rules of Evidence are concerned with the authentication and identification of evidence.

8. Illustration (7) to Rule 901(b) provides: *"Public Records or Reports.* Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."

vehicles. G.L.1956 (1982 Reenactment) § 31–2–1. It is authorized by § 31–11–7 to suspend or revoke a license "upon a *showing by its records.*" (Emphasis added.) Here New Hampshire authorities transmitted a copy of a Notice of Action to the Registry in accordance with the Interstate Driver License Compact. Upon receipt the document became a public record of the State of Rhode Island. As such, its authenticity may be proven in accordance with Rule 901(b)(7) "by proof of custody without more." Advisory Committee's Notes to Rule 901 citing Federal Rules of Evidence Advisory Committee's Notes to Fed.R.Evid. 901. *See also Brimbau v. Ausdale Equip. Rental Corp.,* 119 R.I. 14, 20, 376 A.2d 1058, 1061 (1977). A hearing officer may admit as authentic a writing offered as a public record upon a showing that it is in fact from the office that usually keeps such writings. Here the petitioner did not challenge the accuracy of the information contained in the copy, nor did he claim that the document had been forged or altered. The petitioner did not dispute that the document was in the custody of the Registry. Absent a serious challenge to the source or accuracy of a photostatic copy offered as a public record, accompanied by supporting evidence, a hearing officer is entitled to consider such a copy authentic. As no such objection was raised in this case, we conclude that the photostatic copy was properly authenticated.

For the reasons stated, the petition for certiorari is denied. The writ heretofore issued is quashed. The judgment of the District Court is affirmed, and the papers in this case may be remanded to the District Court of the Sixth Division with our decision endorsed thereon.